# Covington, Appellant, v. Hawes-LaAnna Company.

*Equity—Equity practice—Receiverships — Findings of fact—Appeals.*

1. Where upon the audit of a receiver's account, the receiver is surcharged with various sums in consequence of certain findings of fact, and such findings are affirmed by the court below, they will not be disturbed on appeal unless it is clearly shown that they are erroneous.

*Receivership—Surcharge—Operation of business—Loss—Sale of property—Receiver's compensation—Counsel fees—Discretion of court.*

2. Neglect, recklessness, or misconduct in the management of a trust estate in his hands may be sufficient to deprive a receiver of all right to compensation.

3. Appellant was appointed receiver of a manufacturing corporation, upon a bill in which he was plaintiff and to which he made affidavit averring that the assets of the company as a going concern amounted to $150,074.91, and that there were orders on hand for goods which if filled, would net a handsome profit. It was set forth in affidavits filed with the bill that if the business were continued sufficient funds could be realized to pay the creditors in full. Upon these averments the receiver was ordered to continue the business. Appraisements made soon after the receiver's appointment showed the total value of the property to be $135,505.60, and the receiver charged himself with that amount in his accounts subsequently filed. After some intervening accounts and petitions, the court made an order directing that the business be closed up by the receiver not later than a day named, and that the property of the corporation should be sold under the instructions of the court. The property was sold subsequent to the time fixed for very small prices, and the final account of the receiver showed a net balance of $2,963.54. At the audit it appeared from the testimony of an expert accountant that there was an apparent loss in the operation of the business of $11,698.50. The auditor surcharged the receiver with this amount and also with $13,000, for shrinkage of assets, being the difference between the final appraisement of a stock of merchandise made shortly before its sale, and the amount which the merchandise brought at the sale, less an allowance for expenses. The negligence of the receiver and the propriety of certain surcharges, other than those above mentioned,

were admitted. The auditor refused to allow compensation to the receiver, required him to pay a portion of his counsel's fees and four-fifths of the expenses of the audit. *Held,* the court did not err in dismissing exceptions to the report of the auditor.

Argued Jan. 19, 1914. Appeal, No. 280, Jan. T., 1913, by W. Winfred Nuss, Receiver of the Hawes-LaAnna Company, from decree of C. P. No. 5, Philadelphia Co., June T., 1907, No. 5156, dismissing exceptions to auditor's report in case of James C. Covington, W. Winfred Nuss and George W. Ford v. Hawes-LaAnna Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Exceptions to auditor's report.

The opinion of the Supreme Court states the facts.

The account of W. Winfred Nuss, receiver, was referred to Arthur G. Dickson, auditor, who surcharged the receiver in amounts aggregating $32,930.54, and refused to allow him compensation for his services, reduced the amount claimed as compensation for his counsel, and charged him with four-fifths of the expenses of the audit. The court dismissed exceptions to the auditor's report. W. Winfred Nuss, receiver, appealed.

*Error assigned* was in dismissing exceptions to the auditor's report.

*Thos. Raeburn White,* with him *Howard W. Page,* for appellant.

*Hampton L. Carson,* with him *Wilton A. Erdman* and *Joseph Carson,* for appellees.

OPINION BY MR. JUSTICE POTTER, April 20, 1914:

This appeal by W. Winfred Nuss, who was receiver of the Hawes-LaAnna Company, is from the decree of the court below, affirming the report of an auditor who was appointed to pass upon the accounts of appellant as re-

ceiver. It appears that the Hawes LaAnna Company was a corporation formed under the laws of New York, and incorporated in that state on July 18, 1906, with an authorized capital stock of $150,000.00. Its business was the manufacture of wooden novelties, principally toys, and it had two factories, one at LaAnna, Pa., and the other at Towanda, Pa., and a business office in Philadelphia. On August 16, 1907, James C. Covington, W. Winfred Nuss and George W. Ford, who were stockholders, filed in the court below a bill in equity against the company, in which it was alleged, that while the corporation was solvent, it was unable to meet its liabilities; that a judgment had been obtained against it, and various creditors were threatening suit, and that a receivership was necessary to prevent sacrifice of its assets. Upon this bill and accompanying affidavits, the court appointed as receiver, W. Winfred Nuss, one of the complainants, who was a director in the company, and its president and treasurer, as well as its active manager. Under authority of the court the receiver continued the business of the corporation until 1910, when all its property was sold under orders of the court. On January 9, 1911, the receiver's account, which was his second account, was filed and referred to an auditor. On July 15, 1912, a third account was filed, which was referred to the same auditor. This last account showed a balance in the hands of the accountant of $2,963.54 and a further debit was admitted of $147.00, making a total admitted balance of $3,110.00. For various reasons fully set forth in his report, the auditor surcharged the accountant with a sum, stated by the court below to be $32,930.54. He also refused to allow the accountant compensation for his own services, and reduced the amount allowed as compensation for his counsel. He was also charged with four-fifths of the expense of the audit. The findings of fact by the auditor upon which these surcharges were based, were affirmed by the court

below, and therefore they will not be here disturbed, unless it is clearly shown that they are erroneous.

In the first assignment it is alleged that there was error in surcharging the receiver with losses in the operation of the business amounting to $11,698.50. It appears that in the bill filed asking for the appointment of a receiver, appellant averred that a fair and reasonable valuation of the assets of the company as a going concern was $150,074.91 and it was stated in the bill that there were orders on hand for goods, to the amount of about $150,000.00, which if filled, would net a handsome profit to the corporation. It was averred in the affidavit that the business was conducted at a profit, and if undisturbed would soon realize sufficient funds to pay creditors in full and save the property intact for the stockholders. Shortly after his appointment the receiver had an appraisement of the property made, by three appraisers selected by himself. They figured the total value of all the property at $135,505.60. This inventory and appraisement was made August 16, 1907, but was not filed until July 28, 1908. On November 10, 1908, the receiver filed his first account in which he charged himself with the amount of the inventory and appraisement and claimed to have made a gain of $1,680.01. After deducting all credits claimed, this account showed property in the hands of the receiver of the value of $128,353.19. On June 3, 1909, certain creditors and stockholders of the company filed a petition asking for the revocation of the appointment of the receiver, to which he filed an answer, in which he denied that the assets of the corporation were growing less, or that its business had been conducted to the injury of the stockholders and creditors, and averred that the business had been conducted without loss. On July 6, 1909, the court made an order directing that the business be closed up by the receiver not later than January 1, 1910, and that the property of the corporation, both real and personal, should be sold under the instruction of the

court.  The property was finally sold in March and
April, 1910, for very small prices and the second and
third accounts of the receiver showed a net balance of
$2,963.54.  The statement of the expert accountant em-
ployed by the auditor to go over the books and accounts
shows, that taking the inventory and appraisement of
August 16, 1907, as a basis, there was an apparent loss
in the operation of the business of $11,698.50.  Counsel
for appellant argue that this was made to appear by the
use of two inventories made for different purposes.  But
we do not find, support for this suggestion in the evi-
dence.  As we understand it, both of the inventories
were upon the same basis.  Appellant testified that the
same prices were used in fixing values in the later in-
ventories as were used in the former one, and that this
was purposely done, to avoid confusion.  As we read the
evidence it sustains the conclusion of the auditor and
of the court below, upon this item.  Furthermore the
testimony warrants the conclusion that the receiver did
not give proper attention to the conduct of the business,
and the auditor found as a matter of fact, that the re-
ceiver neglected, and mismanaged it.

In the second assignment, it is alleged that there was
error in surcharging the receiver with the sum of $13,-
000.00 for alleged shrinkage of assets.  In the order of
the court of July 6, 1909, there was a direction that "the
conduct of the business by the receiver is to be finally
closed up not later than January 1, 1910, and imme-
diately thereafter said receiver shall cause to be made
a full inventory and appraisement of the assets on
hand."  The business was not, however, finally closed up
until after the date named, and the inventory and ap-
praisement was not made until March 26, 1910.  It in-
cluded the stock, tools and other personal property at
the factory at Towanda, which was appraised at $14,-
531.47.  This appraisement was made by ten men, who
all made an affidavit that the inventory was true and
correct.  Yet within two weeks the receiver sold this

property for the sum of $530.00 or at a loss of more than $14,000.00 as compared with the sworn appraisement. No wonder that the appellant himself characterized the transaction as absurd. It could hardly be termed a sale. It was essentially giving away the property. Surely a full explanation for such a sacrifice was called for. It is not enough to suggest that the values set forth in the inventory were inflated. An inspection does not indicate anything of the kind. If the inventory was not correct, the burden was upon the accountant to point out in detail wherein the fault lay. We do not see that this was done. The discrepancy between the amount of the appraisal, and that received at the sale was so great as to amount to a demonstration that something was wrong. It may have been the method of the sale. But whatever it was, the burden of explaining such a sacrifice was upon the appellant, and he has not met that burden to the satisfaction of the auditor or of the court below. Goods appraised at over $14,500.00 were sold for $530.00 to a purchaser who afterwards conveyed the property to Nuss individually. It was therefore in substance a sale by the receiver to himself. The property was afterwards transferred to a new company, which employed Nuss as superintendent. After careful consideration of the evidence relating to the whole transaction, the auditor allowed a liberal sum, $1,000.00 for the expenses of the sale, and surcharged the accountant with $13,000.00 of the loss. Referring to this item, and to loss from operation, the court below said: "All that has been said by the learned auditor in his report in the discussion of the propriety of these two surcharges is more than justified by the facts. If a receiver can, under oath, present an account to the court based upon an inventory of a certain date, and then thereafter claim that no such inventory had ever been taken because he had not been able to find it or any trace of it, and if he can further delegate his authority while away from the country on a trip to South America, and from time to

time give assurances to the court that the business conducted by him was at a profit, and during his administration utterly fail to keep any orderly system of accounting, but present books 'admittedly in a deplorable condition,' what protection will there be for either creditors or stockholders of a corporation in the hands of a receiver under such conditions? The auditor, in the judgment of the court, reached the only conclusion which could be reached under the law and the facts presented to him." We agree that the testimony was sufficient to support the findings of the auditor.

In the third assignment, counsel for appellant alleges error in refusing to allow compensation to the receiver. This was a matter largely within the discretion of the court below. The negligence of the receiver was conceded. His counsel admitted the propriety of and did not contest, surcharges amounting to $18,689.86. In view of these facts it certainly cannot be said that there was any abuse of discretion upon the part of the court below, in refusing compensation to the accountant. An officer of a court, when found guilty of inefficiency and wilful neglect of duty, as this receiver was shown to have been, can have no just claim for compensation. The general rule upon the subject is summed up in 34 Cyc. L. & N. 468, where it is said: "Neglect, recklessness, or misconduct in the management of a trust estate in his hands may be sufficient to deprive the receiver of all right to compensation. So where a receiver shows want of capacity in the management of the property intrusted to him, and a lack of appreciation of his obligations as receiver, his claim for compensation may be rejected or reduced." This statement of the law is supported by Pangburn v. American Vault, Safe & Lock Co., 205 Pa. 93; Schwartz v. Keystone Oil Co., 153 Pa. 283.

In the fourth assignment of error complaint is made of the disallowance of counsel fees. The auditor allowed what he considered a proper and reasonable fee for services rendered by counsel to the receiver, for the

benefit and protection of the creditors and stockholders of the corporation, such an amount being in his judgment the sum of $1,250.00. He refused to allow anything for services rendered for the benefit of the receiver personally. We see no reason whatever to differ from the judgment of the court below which sustained the action of the auditor in this respect.

The assignments of error are all dismissed, and the decree of the court below is affirmed.